**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

|  |  |
|---|---|
| EVERGREEN HEALTH COOPERATIVE INC.,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>UNITED STATES DEPARTMENT  )<br>OF HEALTH AND HUMAN SERVICES, *et al.*,  )<br>)<br>Defendants.  )<br>)<br>)<br>) | Civ. No. 16-cv-2039 |

**MOTION FOR TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE,
EXPEDITED HEARING AND DECISION ON
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Due to events arising in the last several days, Evergreen Health hereby moves for a temporary restraining order to enjoin Defendants from assessing or collecting the 2015 risk adjustment payment that is the subject of this action. In the alternative, Evergreen Health requests an expedited briefing schedule and hearing that would permit a decision on its pending Motion for Preliminary Injunction (ECF No. 18) before August 1st.[1]

In the one week since the Defendants announced the 2015 risk adjustment assessments and Evergreen Health moved for preliminary injunction, at least one health plan in another State has already been placed into receivership. Recent actions by the Maryland Insurance Administration ("MIA") indicate that Evergreen Health also faces the devastating and irreparable

---

[1] Notice of this motion will be provided to Defendants via certified mail and in-person delivery within one (1) day of filing. A certificate of service attesting to this notice is included at the end of this motion.

injury of administrative action, including the possibility of receivership, unless Defendants are enjoined from assessing or collecting the 2015 risk adjustment payments before August 1st.

## REASONS THE MOTION SHOULD BE GRANTED

Last Thursday, June 30, 2016, the Centers for Medicare & Medicaid Services ("CMS") announced the risk adjustment charges and payments for 2015, including a $24.2 million assessment against Evergreen Health. The fall-out from this announcement has been swift and sweeping. It has been widely reported that many small and rapidly growing plans like Evergreen Health are facing enormous risk adjustment payments to CMS, which will then transfer the payments to other plans — almost always, the beneficiaries of the transfer payments are large, established carriers.[2]

Almost immediately, state insurance officials across the country have had to deal with the consequences of the announced assessments. On the day that the assessments were announced, New York's insurance commissioner wrote to CMS expressing concern about the market impact of the risk adjustment methodology and urging changes immediately.[3] On the same day, the Acting Director of Insurance for the State of Illinois informed CMS that it had ordered a plan in Illinois not to make risk adjustment payments in order to prevent a "mid-year liquidation that would trigger marketplace disruption and extreme financial harm." Att. B (Letter from Anne M.

---

[2] *See, e.g.*, Jed Graham, *ObamaCare Just Killed Its Lowest-Cost Insurers*, Investors Bus. Daily, July 1, 2016, *available at* http://www.investors.com/news/obamacare-just-killed-its-lowest-cost-insurers; Bob Herman, *ACA's Risk Adjustment Hammers Small Plans Again*, Modern HealthCare, June 30, 2016, *available at* http://www.modernhealthcare.com/article/20160630/NEWS/160639997.

    In Maryland, Evergreen Health's payment of $24.2 million will be transferred, along with payments of other Maryland insurers, to CareFirst BlueCross BlueShield.

[3] Dan Goldberg, *Cuomo Administration Asks Feds for "Immediate Changes" to Risk Adjustment Program*, Politico, July 5, 2016, *available at* http://www.politico.com/states/new-york/albany/story/2016/07/cuomo-administration-asks-feds-for-immediate-changes-to-risk-adjustment-program-103529.

Dowling, Acting Director of Insurance, State of Illinois to Kevin J. Counihan, Director and Marketplace Chief Executive Officer, CMS Center for Consumer Information and Insurance Oversight (June 30, 2016)).  By the end of the July 4th holiday weekend, another small new market entrant in Connecticut was placed under supervision, after state regulators determined that it was financially unstable due to CMS's assessed risk adjustment liability of $13.4 million.[4]

As explained in Evergreen Health's Motion for Preliminary Injunction, filed last week, Evergreen Health believed it could avoid a similar fate — despite the risk adjustment assessment approaching 30 percent of its premium revenue — by securing loans that would enable it to maintain minimally adequate reserves.  Beilenson Decl. ¶ 57, Mot. for Prelim. Inj., ECF No. 18, Att. A.  However, as news of the disastrous consequences for other plans began to spread, the MIA notified Evergreen Health on July 5, 2016 that, in order "to ensure that the Company has adequate surplus to satisfy its current and future obligations to policyholders and creditors under the plan and to ensure adequate liquidity when the risk adjustment payment becomes due on August 15th," the MIA "expect[s] that commitments for loans with outside financiers will be converted to surplus notes by **August 1, 2016**."  Second Beilenson Decl., Att. A, Ex. 1 (Correspondence from Lynn Beckner, Chief Financial Analyst, MIA, to Peter Beilenson, Pres. and CEO, Evergreen Health Cooperative, Inc. (July 5, 2016) (emphasis added)).  The MIA explained that "[c]onverting commitments for loans with outside financiers to surplus notes by August 1, 2016 will allow sufficient time for regulatory approval before the risk adjustment August 15th due date."  *Id.*  In other words, Evergreen Health's regulator is requiring that it

---

[4] Dani Kass, *$13.4M ACA Payment Kills Connecticut Co-Op Insurer*, Law360, July 7, 2016, *available at* http://www.law360.com/health/articles/814616?nl_pk=2fad7620-d935-4aec-91cf-4ca7bc113f14&utm_source=newsletter&utm_medium=email&utm_campaign=health; Erica Teichert, *HealthyCT Crumbles Under ACA Risk Adjustment Charges*, Modern HealthCare, July 6, 2016, *available at* http://www.modernhealthcare.com/article/20160706/NEWS/160709977.

finalize its financing by August 1, 2016.  Failure to comply with the request can result in a range of administrative actions, including receivership, that would irreparably damage Evergreen Health's ability to compete and operate as a going concern.

While Evergreen Health is hopeful it will be able to secure and finalize the requisite financing over the next four to six weeks, the financing will not be finalized by August 1, 2016, and thus the loans cannot be converted to surplus notes by that date.  Second Beilenson Decl. ¶ 8. This means that, absent an order from this Court enjoining the 2015 risk adjustment assessments and payments by August 1st, Evergreen Health will not be able to comply with the requirement of the MIA and faces the very real risk of immediate administrative action, including the possibility of receivership.  *Id.* ¶¶ 7-9.

To avoid this result, Evergreen Health requests that this Court enter a Temporary Restraining Order ("TRO") enjoining the Defendants from assessing, collecting or withholding monies from Evergreen Health under the Risk Adjustment Program, until the earlier of (1) the date on which this Court grants Evergreen Health's Motion for Preliminary Injunction or (2) twenty (20) days after the date on which this Court denies Evergreen Health's Motion for Preliminary Injunction.  A TRO issued under those terms would keep the 2015 risk adjustment liability off of Evergreen Health's books as the Court considers the company's Motion for Preliminary Injunction, while still providing the MIA sufficient time to approve Evergreen Health's surplus notes in the event that preliminary injunction is denied and Evergreen Health is required to pay the remainder of its risk adjustment assessment.

A TRO can be granted if "specific facts . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b).  Courts apply the same four factors at issue in motions for

preliminary injunction: 1) likelihood of success on the merits, 2) whether the movant will face irreparable harm in the absence of a TRO, 3) the balance of equities, and 4) the public interest. *Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997) (quoting *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir. 1991)); *Ficker v. Tuohy*, 305 F. Supp. 2d 569, 571 (D. Md. 2004). All of these factors have been addressed in Evergreen Health's Motion for Preliminary Injunction, which is referenced and incorporated herein, although the risk of irreparable harm is now even more severe and immediate. Any administrative action by the MIA, including but not limited to receivership, will almost certainly result in a termination of policies and loss of referrals, as no business or broker will feel confident placing a health insurance program with a company that the regulators deem to be at risk. Beilenson Decl. ¶ 61; Second Beilenson Decl. ¶ 9. It will also cause irreparable injury to Evergreen Health's reputation, which will negatively impact Evergreen Health for years, even if the company eventually prevails on the merits in this litigation

For these reasons, Evergreen Health moves for a TRO of limited duration so that the Court may "preserve the status quo only until a preliminary injunction can be held…. 'and prevent[] irreparable harm just so long as is necessary to hold a hearing, and no longer.'" *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 339 (1974)).

Evergreen Health also requests that this Court set only a nominal bond for security. *See* Fed. R. Civ. P. 65(c). The Court has full discretion to "set the bond amount 'in such sum as the court deems proper.'" *Hoechst Diafoil Co.*, 174 F.3d at 421 (quoting Fed. R. Civ. P. 65(c)). Because the purpose of the bond is to provide security for any improvidently granted injunction,

the amount set ordinarily depends on the gravity of the potential harm to the enjoined party, here the federal Government. *Doe v. Pittsylvania County, VA et al.*, 842 F. Supp. 2d 927, 937 (W.D. Va. 2012). Where the risk of harm is remote, or where the bond is requested against the federal Government, a nominal bond, such as a bond amount of zero, will suffice. *See Hoechst*, 174 F.3d at 421 n.3 (favorably citing Second Circuit's decision to set bond at zero dollars, in the absence of evidence that injunction would cause harm to enjoined party); *West Virginia Highlands Conservancy v. Island Creek Coal Co.*, 441 F.2d 232, 236 (4th Cir. 1971) (setting bond of $100.00 because the Government would not suffer serious damage from an injunction delaying timber-cutting until the Court could decide the issues raised in the litigation); *Natural Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167, 169 (D.D.C. 1971) (setting a bond of $100.00 in preliminary injunction against the Environmental Protection Agency because "[i]t would be a mistake to treat a revenue loss to the Government the same as pecuniary damage to a private party"). In this case, the risk of harm to the Defendants is remote. Evergreen is seeking to enjoin the collection of a $24.2 million payment only until such time as the Court has the opportunity to rule on the merits of the preliminary injunction. This payment represents just 0.002 percent of the fiscal year 2016 budget for the Department of Health and Human Services, which is over a trillion dollars.[5] Accordingly, a bond of $0.00 should be set for this TRO.

Should the Court wish to avoid a TRO, Evergreen Health in the alternative requests an expedited hearing and decision on its pending Motion for Preliminary Injunction. Defendants' response to Evergreen Health's Motion for Preliminary Injunction is currently due July 18, 2016, and Evergreen Health's reply is due August 1, 2016. However, Evergreen Health is willing to

---

[5] *See* U.S. Department of Health and Human Services ("HHS") Fiscal Year ("FY") 2016 Budget in Brief, http://www.hhs.gov/about/budget/fy2016/budget-in-brief/index.html.

expedite its reply, so that it would be filed by July 22, 2016.  This would allow the Court one week to hold a hearing and render a decision on the preliminary injunction motion before the MIA's August 1 deadline.

Respectfully submitted,

/s/ Mary T. Porter

Mary T. Porter (Bar # 03060)
(signed by Shruti Barker with permission of Mary Porter)
Evergreen Health Cooperative Inc.
3000 Falls Road #1
Baltimore, MD 21211
T: 443-451-8985
F: 844-657-3676
E-mail: mtp@evergreenmd.org

/s/ Caroline M. Brown

Caroline M. Brown (Bar # 805410)
(signed by Shruti Barker with permission of Caroline Brown)
Covington & Burling LLP
One CityCenter
850 10th Street NW
Washington, DC 20001
T: 202-662-5219
F: 202-778-5219
E-mail: CBrown@cov.com

/s/ Philip J. Peisch

Philip J. Peisch (Bar # 17883)
(signed by Shruti Barker with permission of Philip Peisch)
Covington & Burling LLP
One CityCenter
850 10th Street NW
Washington, DC 20001
T: 202-662-5225
F: 202-778-5225

E-mail: PPeisch@cov.com

/s/ Shruti C. Barker

Shruti C. Barker (Bar # 805396)
Covington & Burling LLP
One CityCenter
850 10th Street NW
Washington, DC 20001
T: 202-662-5031
F: 202-778-5031
E-mail: SBarker@cov.com

July 8, 2016

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Caroline M. Brown, hereby certify that I caused a true and correct copy of Plaintiff's Motion for Temporary Restraining Order or, in the Alternative, Expedited Hearing and Decision on Plaintiff's Motion for Preliminary Injunction to the following via certified mail and in-person delivery:

Dept. of Health and Human Services
Sylvia Burwell, Secretary of HHS
Centers for Medicare and Medicaid Services
Andrew Slavitt, Acting Administrator CMS
200 Independence Ave., SW
Washington, DC 20201

Rod J. Rosenstein, United States Attorney
United States Attorneys' Office
36 South Charles St., 4th Fl.
Baltimore, MD 21201

Loretta Lynch, Attorney General of the U.S.
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC, 20530


/s/ Mary T. Porter

Mary T. Porter (Bar # 03060)
(signed by Shruti Barker with permission of Mary Porter)
Evergreen Health Cooperative Inc.
3000 Falls Road #1
Baltimore, MD 21211
T: 443-451-8985
F: 844-657-3676
E-mail: mtp@evergreenmd.org

/s/ Caroline M. Brown

Caroline M. Brown (Bar # 805410)
(signed by Shruti Barker with permission of Caroline Brown)
Covington & Burling LLP
One CityCenter
850 10th Street NW
Washington, DC 20001
T: 202-662-5219
F: 202-778-5219
E-mail: CBrown@cov.com

  /s/ Philip J. Peisch

Philip J. Peisch (Bar # 17883)
(signed by Shruti Barker with permission of Philip Peisch)
Covington & Burling LLP
One CityCenter
850 10th Street NW
Washington, DC 20001
T: 202-662-5225
F: 202-778-5225
E-mail: PPeisch@cov.com

  /s/ Shruti C. Barker

Shruti C. Barker (Bar # 805396)
Covington & Burling LLP
One CityCenter
850 10th Street NW
Washington, DC 20001
T: 202-662-5031
F: 202-778-5031
E-mail: SBarker@cov.com

*Counsel for Plaintiffs*

Dated: July 8, 2016