UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION


| | | |
|---|---|---|
| EVERGREEN HEALTH COOPERATIVE, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:16-cv-02039- GLR |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS II AND III OF THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND ............................................................................................................... 4

ARGUMENT .................................................................................................................... 8

    I.     SOVEREIGN IMMUNITY BARS PLAINTIFF'S REQUESTED RELIEF FOR
COUNT II .................................................................................................................. 10

    II.    A MONETARY JUDGMENT FROM THE COURT OF FEDERAL CLAIMS
WOULD BE AN ADEQUATE REMEDY IN A COURT WITH RESPECT TO
COUNT II .................................................................................................................. 12

    III.    COUNT II DOES NOT CHALLENGE A SPECIFIC FINAL AGENCY
ACTION .................................................................................................................... 14

    IV.    COUNT II FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE
GRANTED BECAUSE IT IS BASED UPON THE ERRONEOUS PREMISE THAT
THE DEPARTMENT HAS VIOLATED A STATUTORY OBLIGATION .............. 17

    V.    COUNT III SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED .......................................................... 20

CONCLUSION ............................................................................................................... 21

## PRELIMINARY STATEMENT

The government respectfully moves to dismiss Count II of Plaintiff's Complaint for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.   The government also respectfully moves to dismiss Count III of Plaintiff's Complaint for failure to state a claim upon which relief can be granted.[1]

The conditional clauses in Count II of Plaintiff's Complaint and in Plaintiff's request for relief as to Count II are fundamental to Plaintiff's assertion of, and the Court's lack of, jurisdiction over this Count.   Plaintiff does not allege in Count II that it is unlawful for the Department of Health and Human Services ("Department") to assess and collect Plaintiff's risk adjustment charge, but rather that the Department should not do so "while refusing to honor its [alleged] statutory obligation to make full risk corridors payments."   Compl ¶ 78.   And, in its prayer for relief on this Count, Plaintiff does not ask that the Court forbid the Department from assessing or collecting Plaintiff's risk adjustment charge forever more, but only that the Court forbid Plaintiff from doing so "until the government fulfills its [alleged] statutory obligation to pay the full amount of the risk corridors payments that it owes Evergreen Health."   *Id.* at 25.

Plaintiff argues that this coupling of risk corridors and risk adjustment distinguishes Count II from a straightforward suit to recover the "risk corridors amounts that it is owed," which suit Plaintiff concedes "would need to be filed in the Court of Federal Claims."   Pl.'s PI Reply at 18-19 (ECF No. 26).   Rather, Plaintiff argues, its claim is that *because* the Department has allegedly "refus[ed] to honor its statutory obligation to make full risk corridors payments," *id.* ¶ 78, the agency ought to change the risk adjustment program so that it does not "assess and

---

[1] The government is not moving to dismiss Count I and is amenable to establishing a schedule for summary judgment briefing on that Count with the benefit of the administrative record, which Defendants now anticipate filing on or before August 25, 2016.

collect [] full risk adjustment payments," *id.*, albeit only "until" the underlying alleged violation of the government's risk corridors obligations has been cured. *Id.* at 25.

In actuality, Count II is a thinly-disguised request to make risk corridor payments that Plaintiff contends it is now owed.  As this Court correctly recognized in denying a preliminary injunction, Count II is seeking "in essence an ironclad IOU from the government or in essence a postdated check for sometime in the future."  Tr. of Mot. Hearing at 18 (July 21, 2016) ("July 21 Transcript").  "This amounts to a claim for monetary relief" over which exclusive jurisdiction lies in the Court of Federal Claims.  *Id.*  The convoluted structure of Count II does not alter this conclusion—indeed, it plays a role in each of three threshold defects that prevent Plaintiff from gaining relief from this Court on this count.

First, Plaintiff does not in Count II seek relief "other than money damages," 5 U.S.C. § 702, so this count does not fit within the Administrative Procedure Act's ("APA") waiver of sovereign immunity.  Plaintiff requests that the Court prohibit the Department from collecting Plaintiff's risk adjustment charge as a remedy for the Department's failure to make risk corridor payments that Plaintiff believes it is now owed.  This request is tantamount to one for an order that the Department pay Plaintiff money, which can only be sought from the Court of Federal Claims under the Tucker Act, not from this Court under the APA.  *See Brazos Elec. Power Coop., Inc. v. United States*, 144 F.3d 784,787 (Fed. Cir. 1998).  And Plaintiff's rationale for such relief—so the offset of its risk adjustment charge can substitute (temporarily) for the funds it believes it should have but has not yet been paid under the risk corridors program—makes that relief compensatory.  So Plaintiff asks the Court to order "money damages," both literally and as that phrase was interpreted by the Supreme Court in *Bowen v. Massachusetts*, 487 U.S. 893, 894 (1988).

Second, the APA does not provide for review of agency actions as to which there is an alternative "adequate remedy."  5 U.S.C. § 704.  The essence of Count II is Plaintiff's allegation that the Department now owes Plaintiff additional risk corridors payments, and monetary relief from the Court of Federal Claims would be an adequate remedy for such a claim.

Third, and finally, the APA provides for review on the record of any "final agency action" (subject to the "other adequate remedy" prerequisite and a few others), 5 U.S.C. § 704, but it is Plaintiff's responsibility to identify the specific agency action that it wants the Court to review.  This rule is functionally indispensable because, without a specific final agency action to review, the Court will not have either an administrative decision or an underlying record to review.  It appears that Plaintiff actually seeks an amendment to the risk adjustment rules, but Plaintiff has not followed the procedure set forth in the APA for such a request.  *See Auer v. Robbins*, 519 U.S. 452, 459 (1997) (where claim is failure "to conduct amendatory rulemaking . . . [t]he proper procedure . . . is set forth explicitly in the APA: a petition to the agency for rulemaking").  As such, Count II is barred by the APA's "final agency action" requirement.

For these three reasons, elaborated upon below, Defendants respectfully request that the Court dismiss Count II of Plaintiff's Complaint for lack of subject matter jurisdiction.  Should the Court nonetheless find jurisdiction, however, the Court should dismiss Count II for failure to state a claim upon which relief can be granted.  The Department is not required to make full risk corridors payments at the end of each year and, indeed, it cannot do so.  As elaborated upon below, Congress enacted appropriations restrictions for fiscal years 2015 and 2016 that prevent the Department from using amounts appropriated for other purposes to make payments under the risk corridors program, thereby limiting the Department to the use of certain user fee collections

to make risk corridors payments during each of the program's three years.[2]  The Department's three-year payment methodology allows it to pay out the maximum amount possible on claims for each program year, while adhering to this limitation on its spending authority.  *See* July 21 Tr. at 17 (noting "deficit that needs to be balanced and reconciled for 2014 before 2015 disbursements can be made").

Last, Count III of Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted.  Plaintiff's reading of the ACA to allow states and only states to operate a risk adjustment program ignores 42 U.S.C. § 18041(c), which provides that the Secretary shall operate a risk adjustment program on behalf of any state that does not.

## BACKGROUND

The most significant source of financial transfers between insurers and the Department under the ACA is monthly advance premium tax credit and cost-sharing reduction payments.  In order to make insurance more affordable, the ACA makes many individuals eligible for federally-subsidized help with their monthly health insurance premiums and their episodic cost sharing requirements (deductibles, copays, and coinsurance).  But rather than provide this assistance directly to eligible individuals after-the-fact or in advance to pay to their health insurers, the ACA provides that the Department of Treasury must pay both subsidies in advance to eligible individuals' insurers.  42 U.S.C. § 18082.  And, if these advance monthly payments wind up being too low (or too high), further payments (or collections) reconcile the difference. *E.g.* 26 C.F.R. 1.36B-4; 45 C.F.R. § 156.430.

---

[2] *See* Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, div. G, title II, § 227, 128 Stat. 2130, 2491 (2014); Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, div. H, title II, § 225, 129 Stat. 2242, 2624 (2015).

In addition to these monthly subsidy payments, the ACA includes three premium stabilization programs—known as the "3Rs"—that involve payments to or from insurers. Two of these programs, reinsurance and risk corridors, are temporary three-year premium stabilization programs. 42 U.S.C. § 18061 (reinsurance); 42 U.S.C. § 18062 (risk corridors). Both protect insurers against the risk of enrolling especially costly individuals. The reinsurance provision, which is not at issue here, covers insurers' costs on the highest-risk individuals. 42 U.S.C. § 18061(a)(1).

Under the risk corridors program, payments are collected from insurers whose allowable costs are less than a target amount by more than three percent, and payments are made to insurers whose allowable costs exceed the target amount by more than three percent. 42 U.S.C. § 18062(b). 42 U.S.C. § 18062(b). The statute governing the risk corridors program establishes the methodology for calculating payments and charges, but it does not specify when HHS must make payments to insurers. 42 U.S.C. § 18062. In April 2014, HHS released guidance explaining that, if risk corridors collections are insufficient to make risk corridors payments for a year, all risk corridors payments for that year will be reduced pro rata to the extent of any shortfall. *See* CMS, Risk Corridors and Budget Neutrality, April 11, 2014. The guidance explained that risk corridors collections received for the next year will first be used to pay off the payment reductions issuers experienced in the previous year in a proportional manner and then be used to fund payments for the current year. *Id.* HHS reiterated and expanded upon this three-year payment framework in final rules issued after notice and comment. *See* Exchange and Insurance Market Standards for 2015 and Beyond, 79 Fed. Reg. 30240, 30260 (May 27, 2014); HHS Notice of Benefit and Payment Parameters for 2016, 80 Fed. Reg. 10750, 10779 (Feb. 27, 2015).

On December 9, 2014, in the annual appropriations act for fiscal year 2015, Congress enacted a specific limitation on HHS's spending authority for risk corridors payments.  The provision prevented HHS from using amounts appropriated for other purposes to make payments under the risk corridors program, and thus limited HHS to the use of certain user fee collections to make risk corridors payments.[3]   On December 18, 2015, Congress enacted an identical limitation in the annual appropriations act for fiscal year 2016.[4]

The third premium stabilization program, risk adjustment, is a permanent program that is run by the federal government in states that do not run the program themselves.  42 U.S.C. § 18063 (risk adjustment program); 42 U.S.C. § 18041 (state responsibility).  Risk adjustment operates on the premise that "premiums should reflect the differences in plan benefits and plan efficiency, not the health status of the enrolled population."  78 Fed. Reg. 15410, 15417 (Mar. 11, 2013).   The program discourages insurers from designing their plans to attract healthier individuals, or raising the premiums they charge if they attract sicker individuals, by requiring plans that attract healthier individuals to pay a charge that funds a counteracting payment to plans that attract sicker individuals.

An individual or insurer dissatisfied with the Department's calculation of payments under any of these programs can appeal administratively, subject to program-specific timely filing rules.  45 C.F.R. § 156.1220.  Specifically: An insurer that feels its subsidy payment amounts are

---

[3] *See* Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, div. G, title II, § 227, 128 Stat. 2130, 2491 (2014) ("None of the funds made available by this Act from the Federal Hospital Insurance Trust Fund or the Federal Supplemental Medical Insurance Trust Fund, or transferred from other accounts funded by this Act . . . may be used for payments under section 1342(b)(1) of Public Law 111–148 (relating to risk corridors)").

[4] *See* Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, div. H, title II, § 225, 129 Stat. 2242, 2624 (2015).

incorrect must appeal the Department's subsidy determination, if at all, within 60 days of being notified of that determination.  *Id.* § 156.1220(a)(3)(i).  And an insurer dissatisfied with its reinsurance, risk corridors, or risk adjustment payment or charge must appeal, if at all, within 30 days of being notified of that payment or charge.  45 C.F.R. § 156.1220(a)(3)(ii), (iii), (vi).  For example, by regulation insurers are notified of their risk adjustment payments and charges for a given calendar year by June 30 of the following year, 45 C.F.R. § 153.310(e), and any appeal of that payment or charge must be filed within 30 days.  45 C.F.R. § 156.1220(a)(3)(iii).

As for the logistics of payment under these programs, the Department has by regulation set forth a payment and collections process that coordinates "across these programs," *HHS Notice of Benefit and Payment Parameters for 2015*, 79 Fed. Reg. 13744, 13817 (Mar. 11, 2014). 45 C.F.R. § 156.1215.  Each month, an insurer is sent a "payment and collections report" that details the various amounts payable to or by the insurer that month, and the Department makes payment of or issues an invoice for the net balance.  45 C.F.R. § 156.1210.  This saves the administrative hassle (and collections risk) of money going back-and-forth in months in which an insurer is to receive a payment under one program (for example, the insurer's monthly subsidy payment), but also is to make a payment under another program (for example, the risk adjustment program). [5]   A separate administrative process applies to these payment and collections reports: An insurer that believes there is a discrepancy in its report may challenge the report within 15 days of receipt.  45 C.F.R. § 156.1210(a)(1).

---

[5]     On July 15, 2016, the Department announced a policy under which it will decline to net subsidy payments (it will continue to make these monthly payments), regardless of moneys owed by the insurer, if a state department of insurance reasonably informs it that continued subsidy payments are necessary for the insurer to continue to pay covered claims.  *Available at* https://www.cms.gov/CCIIO/Resources/Regulations-and-Guidance/Downloads/Netting-Guidance-7-15-16finalv2.pdf.

Plaintiff filed its Complaint on June 13, 2016, ECF No. 1, and the Court denied its motions for emergency relief on July 21, 2016.  ECF No. 31.  On August 1, 2016 the Fourth Circuit denied Plaintiff's emergency motion for injunctive relief pending appeal.  ECF No. 40.

## ARGUMENT

It is undisputed that the Department utilizes a three-year framework for the risk corridors program.  Compl. ¶ 61.  It is also undisputed that, under this three-year framework, Plaintiff's 2014 risk corridors payment will be made from 2015 risk corridors receipts (which have not been determined yet), as well as 2016 risk corridors receipts if necessary.  *See* Centers for Medicare & Medicaid Services, *Risk Corridors and Budget Neutrality*, April 11, 2014, at 1[6]; Centers for Medicare & Medicaid Services, *Risk Corridors for the 2014 Benefit Year*, November 19, 2015 at 1.[7]

The premise of Count II of Plaintiff's complaint is that the three-year framework for the risk corridors program violates the ACA, which Plaintiff reads to require payment in full sometime at the end of each year of the three-year risk corridors program.  Compl. at 23 (assuming CMS has violated a "statutory obligation to make full risk corridors payments").  This premise, along with arguments why Plaintiff believes this premise to be true, is repeated in the Complaint and all of Plaintiff's submissions seeking emergency relief.  *See* Compl. ¶ 62 (alleging Evergreen is harmed by "the Government's refusal to honor its risk corridors obligations"); Pl.'s PI Mem at 33 (alleging that CMS is failing to "honor[] its statutory obligation to make risk corridors payments") (ECF No. 18-1); Pl.'s PI Reply at 19 (alleging that CMS may

---

[6]     *Available       at       https://www.cms.gov/CCIIO/Resources/Fact-Sheeets-and-FAQs/Downloads/faq-risk-corridors-04-11-2014.pdf*.

[7]     *Available       at       https://www.cms.gov/CCIIO/Resources/Regulations-and-Guidance/Downloads/RC_Obligation_Guidance_11-19-15.pdf*.

not collect risk adjustment payments "without taking into account its own obligations" under the risk corridors program) (ECF No. 26).

Although the premise of Count II is that the Department has violated legal requirements to make full risk corridors payments on an annual cycle, Plaintiff does not ask the Court to order the government to administer risk corridors payments on an annual cycle or to order the government to immediately pay in full the remainder of Plaintiff's 2014 risk corridors amount. In short, Plaintiff does not seek relief for the Department's allegedly unlawful administration of the risk corridors program within the risk corridors program. Indeed, Plaintiff objected to the government's suggestion in briefing on Plaintiff's emergency motions that this is what Plaintiff seeks in Count II, acknowledging that if Evergreen were indeed "suing to recover the risk corridors amounts that it is owed" then "such an action would need to be filed in the Court of Federal Claims." *See* Pl.' PI Reply at 18-19.

Instead, in Count II, Plaintiff purports to seek an alteration of the risk adjustment program as the remedy for the Department's alleged failure to make timely risk corridor payments. Specifically, Plaintiff asks the Court to order the Department to reduce Plaintiff's risk adjustment charge (and so *other insurers' risk adjustment payments*) by the amount of risk corridor payments it alleges it is owed. Compl. at 25. Plaintiff argues that doing otherwise would be arbitrary and capricious or contrary to law. *See* Pl.'s PI Reply at 19 ("Evergreen Health contends that it is arbitrary and capricious for the Government to seek to collect payments . . . without taking into account its own obligations to Evergreen Health").

Count II fails on the merits because, as the Court preliminarily held and the government explained in the Fourth Circuit and Court of Federal Claims, its underlying premise—that the three-year framework for risk corridors payments is unlawful and that those payments are now

owed to Plaintiff—is mistaken.[8]  *See* July 21 Tr. at 15:16-19.  But as the Court also preliminarily held, it lacks subject matter jurisdiction over Count II.  July 21 Tr. at 18:17-24.   Three independent threshold defects require dismissal of Count II for lack of subject matter jurisdiction: sovereign immunity, the APA's limitation to actions for which there is no "other adequate remedy at law," and the APA's limitation of the judicial role to reviewing specific "final agency action."

## I.  SOVEREIGN IMMUNITY BARS PLAINTIFF'S REQUESTED RELIEF FOR COUNT II

Count II is barred by the doctrine of sovereign immunity, which is a necessary prerequisite to the exercise of jurisdiction over the United States by any court.  *See e.g., United States v. King*, 395 U.S. 1, 4 (1969).  Such a waiver "must be unequivocally expressed in the statutory text" and "strictly construed, in terms of its scope," in favor of the United States.  *Lane v. Pena*, 518 U.S. 187, 192 (1996).

Plaintiff purports to rely on the APA's waiver of sovereign immunity, but that waiver is limited to relief "other than money damages."   5 U.S.C. § 704.   Plaintiff seeks an order forbidding the government from, *inter alia*, making any effort to collect moneys Plaintiff owes through the risk adjustment program, or even counting Plaintiff's risk adjustment charge as a debt on Plaintiff's payment and collections report.  Compl. at 27.  That is no different than an order requiring the government to pay money to Plaintiff.  *See Brazos Elec. Power Coop. v.*

---

[8] Several insurers have filed lawsuits in the Court of Federal Claims alleging that the three-year framework is unlawful and seeking 2014 risk corridors payments that they allege are presently due.  *E.g. Health Republic Ins. Co. v. United States*, No. 16-00259 (Fed. Cl.).  The government has moved to dismiss in the first of these actions.  *See id.*, United States' Motion to Dismiss at 15-21 (ECF No. 8) (Fed. Cl. June 24, 2016).  The government's motion explains that jurisdiction is lacking at this time because the full risk corridors amounts are not "presently due" and because suits for such amounts are not ripe at this time, *id.*.

*United States*, 144 F.3d 784, 787 (Fed. Cir. 1998) ("Cancellation of debt owed to the federal government under such circumstances is just as much a form of monetary damages for purposes of the Tucker Act as the direct payment by the federal government of conventional monetary damages."). In denying preliminary relief, this Court correctly concluded that the relief Plaintiff seeks is "in essence an ironclad IOU from the government or . . . a postdated check," and that exclusive jurisdiction over this claim lies in the Court of Federal Claims. July 21 Tr. at 18:19-20.

Nonetheless, Plaintiff argues that the order enjoining its risk adjustment charge that it seeks for Count II is not "money damages," focusing on the term "damages" as interpreted by the Supreme Court in *Bowen v. Massachusetts*, 487 U.S. 893, 894 (1988). That case held that a request for an order of "specific" as opposed to "compensatory" relief—an order requiring the government to do the very thing it is statutorily required to do rather than remediating for some separate unlawful action by the government—is not "money damages" even if the legally-required action involves the payment of money. 487 U.S. 893, 894 (1988). But Plaintiff does *not* ask for an order requiring the Department to do the thing Plaintiff says the statute requires, *i.e.*, make payment in full of Plaintiff's risk corridors amount for 2014 and expected risk corridors amount for 2015. *Compare* Pl.'s PI Reply at 18 ("Evergreen Health is not suing to recover the risk corridors amounts that it is owed.") *with Bowen*, 487 U.S. at 900 (suit was not for money damages because it sought to "enforce the statutory mandate itself, which happens to be one for the payment of money"). Instead, Plaintiff argues, based on the faulty premise that the Department has violated a statutory obligation to make full risk corridors payments, that the agency must make a remedial offsetting reduction to the amount it collects for the risk

11

adjustment program.    Compl. ¶ 78 (challenging assessment and collection of risk adjustment charge "while refusing to honor [the] statutory obligation to make full risk corridors payments").

That Plaintiff seeks money through one program as compensation for moneys not paid through another program—money damages, not specific relief—is laid bare by the terms of its request for relief.   Plaintiff asks for a reduction in its risk adjustment charge only "until the Government fulfills its statutory obligation to pay the full amount of the risk corridors payments."   Compl. at 25.   In other words, Plaintiff is asking the Court to order the agency to take a remedial step only "until" the agency corrects the underlying alleged wrong.   This is in no sense a request for "the very thing to which [Plaintiff alleges] [it] was entitled," *Bowen*, 487 U.S. at 893, it is a request for "money . . . to substitute for a suffered loss."   *Id.*   Sovereign immunity bars that request.   While Congress has waived sovereign immunity over actions seeking monetary relief, 28 U.S.C. § 1491, for claims greater than $10,000 it has made the jurisdiction of the Court of Federal Claims over such actions exclusive.   *Id.*

## II.    A MONETARY JUDGMENT FROM THE COURT OF FEDERAL CLAIMS WOULD BE AN ADEQUATE REMEDY IN A COURT WITH RESPECT TO COUNT II

Even if Plaintiff did seek relief "other than money damages," the APA does not provide a cause of action where a Plaintiff has another "adequate remedy in a court."   *See* 5 U.S.C. § 704. A monetary judgment from the court that Congress designated for monetary claims, namely, the Court of Federal Claims, would be an adequate remedy for Count II.   This is another reason the Court should dismiss for lack of subject matter jurisdiction.   *See Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996) ("to determine whether Plaintiff's suit is cognizable under the APA, the court must first examine whether he has an available remedy under the Tucker Act"); *Kidwell v. Dep't of Army*, 56 F.3d 279, 284 (D.C. Cir. 1995) ("a primary purpose of the [Tucker]

Act [is] to ensure that a central judicial body adjudicates most claims against the United States Treasury."); *Alford v. Mabus*, 2015 WL 3885730, at *2 (E.D.N.C. June 23, 2015), *aff'd,* 622 F. App'x 249 (4th Cir. 2015) (dismissing APA case for lack of subject matter jurisdiction because Court of Federal Claims was adequate remedy).

Plaintiff could make its case that the Department must make full risk corridors payments annually to the Court of Federal Claims.[9]  Moreover, were Plaintiff to prevail in that forum, payment in full of the allegedly-due risk corridors amount through a monetary judgment from the Court of Federal Claims would give Plaintiff a full and final remedy for the agency's allegedly unlawful administration of the risk corridors program.

To be sure, the authority of the Court of Federal Claims to grant equitable or prospective relief is limited.  But whether this limitation renders the Court of Federal Claims an inadequate alternative forum does not depend on whether Plaintiff seeks some relief that is unavailable in that forum; it depends on whether such relief is the "essence" of Plaintiff's complaint.  *See Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Housing & Urban Development*, 480 F.3d 1116, 1124 (Fed. Cir. 2007) ("our cases have emphasized that in determining whether a plaintiff's suit is to be heard in district court or the Court of Federal Claims, we must look beyond the form of the pleadings to the substance of the claim"); *Christopher Vill., L.P. v. United States*, 360 F.3d 1319, 1328 (Fed. Cir. 2004) ("A party may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory, or mandatory relief *where the thrust of the suit is to obtain money from the United States.*") (emphasis added); *see also Randall*, 95 F.3d at 346 (in considering the adequacy of the Court of

---

[9] Whether full risk corridors payments are "presently due," a question within the special expertise of the Court of Federal Claims, is currently at issue in the context of the government's motion to dismiss a suit brought by other insurers in that forum.  *See* supra n. 8.

Federal Claims despite its limited ability to issue injunctive relief, asking whether injunctive relief sought was the "essence of [the] complaint").

Here, the premise of Count II is Plaintiff's claim that the agency has "refus[ed] to honor its statutory obligation to make full risk corridors payments to Evergreen Health." Compl. ¶ 78. This is fundamentally a monetary claim, over which the Court of Federal Claims has special competence and exclusive jurisdiction, not a claim for injunctive relief. *See Brazos Elec. Power Co-op., Inc. v. United States,* 144 F.3d 784, 788 (Fed. Cir. 1998) ("in the instant case, a single, uncomplicated payment of money would provide [the plaintiff] with an entirely adequate remedy. No prospective relief would be required and there would be no ongoing relationship to monitor and referee.")

### III.   COUNT II DOES NOT CHALLENGE A SPECIFIC FINAL AGENCY ACTION

Even if Count II did not seek money damages and even if the Court of Federal Claims were not an adequate remedy, Plaintiff has failed to identify which, if any, "final agency action" it challenges in this Count. A "final agency action" is a jurisdictional prerequisite to judicial review under the APA, *see Golden & Zimmerman, LLC v. Domenech*, 599 F.3d 426, 431 (4th Cir. 2010) ("we hold that the ATF's publication of the 2005 edition of the Reference Guide and FAQ F13 did not constitute final agency action reviewable in court, and, accordingly, we affirm the district court's order dismissing this case for lack of subject matter jurisdiction"); *Flue-Cured Tobacco Cooperative Stabilization Corp. v. EPA*, 313 F.3d 852, 862 (4th Cir. 2002)), and Plaintiff bears the burden of identifying such an action. *See Whitner v. United States*, 487 Fed. Appx. 801 at *2 (4th Cir. 2012) ("[Plaintiff's] allegations fail to state any plausible basis for granting her relief pursuant to the APA, as she fails to identify any final agency action entitling her to review in this court"). That requirement makes sense, as unless Plaintiff identifies an

agency action for Count II Defendants cannot identify which administrative record, if any, to file for that Count; the Court will not be able to evaluate whether the challenged action is "final" as also required by the APA; and the Court will not know which action, if any, to review.

In its filings Plaintiff has purported to take issue in Count II with the Department's purported "practice" or "policy" of "refusing to offset the risk corridors payments it owe[s] to Evergreen Health against Evergreen Health's risk adjustment payments." Pls.' Emergency Mot. for Injunction Pending Appeal at 10 (Pls.' Emergency Appeal Mot."), No. 16-1834, ECF No. 11 (4th Cir. July 26, 2016). This will not do; for the Court to have jurisdiction it is not enough for Plaintiff to identify an abstract "policy," Plaintiff must specify "an identifiable action or event." *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 899 (1990). "Except where Congress explicitly provides for [judicial] correction of the administrative process at a higher level of generality, [courts] intervene in the administration of the laws only when, and to the extent that, a specific 'final agency action' has an actual or immediately threatened effect." *Id.* at 894; *see also Norton v. Southern Utah Wilderness Allliance*, 542 U.S. 55, 64 (2004) ("Sections 702, 704, and 706(1) [of the APA] all insist upon an 'agency action[]'").

Plaintiff's failure to identify a specific final agency action as to Count II is not a mere pleading defect. None of the particular agency actions implicated by the Complaint are viable alternative candidates for review under Count II:

- Risk adjustment and risk corridors rules: The risk adjustment rules require notification of charges and payments by June 30, a month before the risk corridors rules even require risk corridors data to be submitted on July 31. *Compare* 45 C.F.R. § 153.310(e) (notification of risk adjustment payments and charges due "by June 30 of the year following the benefit year"); 45 C.F.R. § 153.530(d) (risk corridors data due "by July 31 of the year following the benefit year"). But Defendant does not understand Plaintiff to allege these rules are themselves

arbitrary and capricious in failing to align the notification and data submission dates for the two programs.

- <u>Three-year payment framework</u>:  Plaintiff alleges that the three-year payment framework for risk corridors is itself unlawful, but while that allegation is a *premise* of Count II, Plaintiff insists that it does not want the Court to order that the Department make full risk corridor payments annually, recognizing that "such an action would need to be filed in the Court of Federal Claims."  *See* Pl.' PI Reply at 18-19.

- <u>Risk adjustment notification, payment and collections report, and invoice</u>:  While Plaintiff's emergency motions were focused on the June 30, 2016 notification of Plaintiff's risk adjustment charge and the resulting payment and collections report (and invoice), those are ministerial steps that must be completed pursuant to the pre-existing risk adjustment and payment and collection rules.  *See* 45 C.F.R. § 153.310(e) (risk adjustment notification must issue by June 30); 45 C.F.R. § 156.1215(c) (amount remaining after netting various ACA payments and charges is a determination of a debt).  If Plaintiff thought the Department failed to follow its rules as to any of those final steps, it could (and would need to before seeking judicial review) appeal to the agency and make that case through the administrative process.  *See* 45 C.F.R. § 156.1220 (appeal of risk adjustment or risk corridors payments); 45 C.F.R. § 156.1210 (challenge to payment and collections report).

It appears that what Plaintiff really requests is an amendment to the risk adjustment rules to reduce risk adjustment charges by an amount corresponding to risk corridors payments.  But Plaintiff has not followed the process set out by the APA for seeking such an amendment.[10]  As the Supreme Court explained in *Auer v. Robbins*:

---

[10] This is not to suggest in any way that the Department would necessarily have authority to make such an amendment.  *Cf., e.g.*, Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, div. G, title II, § 227, 128 Stat. 2130, 2491 (2014) ("None of the funds made available by this Act from the Federal Hospital Insurance Trust Fund or the Federal Supplemental Medical Insurance Trust Fund, or transferred from other accounts funded by this

> where, as here, the claim is not that the regulation is substantively unlawful, or even that it violates a clear procedural prerequisite, but rather that it was "arbitrary" and "capricious" not to conduct amendatory rulemaking (which might well have resulted in no change), there is no basis for the court to set aside the agency's action prior to any application for relief addressed to the agency itself. The proper procedure for pursuit of respondents' grievance is set forth explicitly in the APA: a petition to the agency for rulemaking, § 553(e), denial of which must be justified by a statement of reasons, § 555(e), and can be appealed to the courts, §§ 702, 706.

519 U.S. 452, 459 (1997).  *See also Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125

(2016).  Accordingly, Count II is barred by the APA's "final agency action" requirement.

**IV.    COUNT II FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE IT IS BASED UPON THE ERRONEOUS PREMISE THAT THE DEPARTMENT HAS VIOLATED A STATUTORY OBLIGATION**

Even if the Court had jurisdiction over Count II, it should dismiss that Count for failure

to state a claim upon which relief can be granted because it is based upon the erroneous premise

that the Department has "refus[ed] to honor its statutory obligation to make full risk corridors

payments."  Compl ¶ 78.

As a preliminary matter, the vast majority of Count II would fail even if, as Plaintiff

contends, HHS were required to make payments under the risk corridors program at the end of

each year, and even if Plaintiff were correct that HHS should therefore offset payments and

liabilities from the risk adjustment and risk corridors programs.  As Plaintiff acknowledged in

the court of appeals, Pl.'s Emergency Appeal Mot. at 13—and as common sense dictates—

offsetting principles do not apply when the parties do not owe each other "determinable

amounts."  Plaintiff's risk corridors payment amount for benefit year 2015 is not presently

---

Act . . . may be used for payments under section 1342(b)(1) of Public Law 111-148 (relating to risk corridors)"); Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, § 225, 129 Stat. 2242, 2624 (2015) (same).  But, regardless of the disposition of a petition for amendatory rulemaking, following the APA's procedure creates an administrative record and agency explanation for the Court to review.

"determinable."  Although Plaintiff's expert predicts that HHS *will* calculate an $18.3 million payment for plaintiff for benefit year 2015, insurers did not even submit their risk corridors data for benefit year 2015 until the July 31 deadline.  See 45 C.F.R. § 153.530(d).  Following data submission, HHS validates the data before confirming issuer calculations and announcing results.  For benefit year 2014, the results were not announced until November 19, 2015.  Accordingly, even on Plaintiff's own theory, its payment amount for benefit year 2015 under the risk corridors program is not determinable now and thus cannot be subject to offset.

As for the remaining $3.7 million of Plaintiff's 2014 risk corridors payment, the Department is not required to make full risk corridors payments at the end of each year and, indeed, it cannot do so.  While the statute governing the risk corridors program establishes the methodology for calculating payments and charges, it does not specify when the Department must make payments to insurers.  42 U.S.C. § 18062.  As discussed above, in April 2014, the Department released guidance explaining that, if risk corridors collections are insufficient to make risk corridors payments for a year, all risk corridors payments for that year will be reduced pro rata to the extent of any shortfall.  *See* CMS, Risk Corridors and Budget Neutrality, April 11, 2014.  The guidance explained that risk corridors collections received for the next year will first be used to pay off the payment reductions issuers experienced in the previous year in a proportional manner and then be used to fund payments for the current year.  *Id*.  The Department reiterated and expanded upon this three-year payment methodology in final rules issued after notice and comment.  *See* Exchange and Insurance Market Standards for 2015 and Beyond, 79 Fed. Reg. 30240, 30260 (May 27, 2014); HHS Notice of Benefit and Payment Parameters for 2016, 80 Fed. Reg. 10750, 10779 (Feb. 27, 2015).

On December 9, 2014, in the annual appropriations act for fiscal year 2015, Congress enacted a specific limitation on the Department's spending authority for risk corridors payments. The provision prevented the Department from using amounts appropriated for other purposes to make payments under the risk corridors program, and thus limited the Department to the use of certain user fee collections to make risk corridors payments.[11]  On December 18, 2015, Congress enacted an identical limitation in the annual appropriations act for fiscal year 2016.[12]

Plaintiff argues that notwithstanding the absence of a statutory payment deadline and these express statutory limitations on the Department's spending authority, the Department's failure to make full risk corridors payments on an annual basis is unlawful.  That is incorrect.  As noted above, the statute establishing the risk corridors program neither requires the Department to make annual payments nor imposes any other temporal constraints.  *See* 42 U.S.C. § 18062; 45 C.F.R. § 153.510.  In the absence of a specific statutory direction, "agencies, not the courts, . . . have primary responsibility for the programs that Congress has charged them to administer." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992).  By declining to specify when payments were due and delegating to the Department the responsibility to "establish and administer" the risk corridors program, 42 U.S.C. § 18062(a), Congress conferred "broad discretion" to the Department "to tailor [the] . . . program to fit both its needs and its budget." *Contreras v. United States*, 64 Fed. Cl. 583, 599 (2005), *aff'd*, 168 F. App'x 938 (Fed. Cir. 2006).  It was not

---

[11] *See* Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, div. G, title II, § 227, 128 Stat. 2130, 2491 (2014) ("None of the funds made available by this Act from the Federal Hospital Insurance Trust Fund or the Federal Supplemental Medical Insurance Trust Fund, or transferred from other accounts funded by this Act . . . may be used for payments under section 1342(b)(1) of Public Law 111–148 (relating to risk corridors)").

[12] *See* Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, div. H, title II, § 225, 129 Stat. 2242, 2624 (2015).

unlawful for the Department to exercise that discretion by establishing a three-year payment framework.

Furthermore, the three-year payment framework is consistent not only with the text of 42 U.S.C. § 18062, but also with the subsequently enacted 2015 and 2016 appropriations laws. The three-year framework allows the Department to pay out the maximum amount possible on claims for each program year, while adhering to Congress's spending limitations.   In the Explanatory Statement to the 2015 appropriations restriction, Congress explained that "[i]n 2014, HHS issued a regulation stating that the risk corridor program will be budget neutral, meaning that the federal government will never pay out more than it collects from issuers over the three year period risk corridors are in effect."  160 Cong. Rec. H9838 (daily ed. Dec. 11, 2014).  The Explanatory Statement explained that the spending restriction "prevent[s] the CMS Program Management appropriation account from being used to support risk corridors payments."  *Id.*

## V.     COUNT III SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Count III of Plaintiff's Complaint asserts that the ACA does not empower the Department to administer the risk adjustment program, focusing on the fact that Section 1343 of the Act says that states are to administer their own risk adjustment program.  Pl.'s Mem. at 38-41.  Plaintiff's interpretation of the ACA is incorrect as a matter of law.  "Although phrased as a requirement, the Act gives the States 'flexibility' by allowing them to 'elect' whether they want to" operate a risk adjustment program in Section 1321.  *See King v. Burwell*, 135 S. Ct. 2480, 2489 (2015).  Should a State opt not to operate its own risk adjustment program, the statute provides that the Department should operate the program on the State's behalf.  Specifically, it provides that:

> If . . . the Secretary determines . . . that an electing State . . . has not taken the actions the Secretary determines necessary to implement . . . the other requirements set forth in the standards under subsection (a) . . . the Secretary shall . . . take such actions as are necessary to implement such other requirements.

*See* 42 U.S.C. § 18041(c).  The list of "standards under subsection (a) of section 1321" includes, in turn, "the establishment of the . . . risk adjustment program[.]"  *Id.* § 18041(a).

All parties agree that Maryland did not attempt to implement its own risk adjustment program.  *See* Compl. ¶ 40 ("Maryland did not develop and obtain certification from the federal Government for its own risk adjustment model, and thus CMS's methodology applies to Evergreen Health and other issuers and plans in Maryland.").   So the statutory text unambiguously authorizes the Department to operate the risk adjustment program in the state.

Moreover, even if the statute were ambiguous, Plaintiff would not succeed on this claim because the Court owes deference to the Department's interpretation of the ACA.  *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 843 (1984).  The Department has explained its view that it may operate a risk adjustment program in any state that does not operate its own.   77 Fed. Reg. at 17230 ("HHS will administer all of the risk adjustment functions for any State that elects to establish an Exchange but does not elect to administer risk adjustment."); *id.* ("Many commenters supported permitting States to defer operation of a risk adjustment program to HHS."); 78 Fed. Reg. at 15415 ("Our authority to operate risk adjustment on the State's behalf arises from sections 1321(c)(1) and 1343 of the Affordable Care Act. Based on HHS's communications with States, as of February 25, 2013, Massachusetts is the only state electing to operate a risk adjustment program for the 2014 benefit year.")

## CONCLUSION

The Court should dismiss Count II of Plaintiff's Complaint for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.

And the Court should dismiss Count III of Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

Dated: August 15, 2016                    Respectfully submitted,


                                          BENJAMIN C. MIZER
                                          Principal Deputy Assistant Attorney General

                                          ROD J. ROSENSTEIN
                                          United States Attorney

                                          JOEL McELVAIN
                                          Assistant Branch Director
                                          Federal Programs Branch

                                          */s/ Matthew J.B. Lawrence*
                                          MATTHEW J.B. Lawrence
                                          Trial Attorney
                                          United States Department of Justice
                                          Civil Division
                                          Federal Programs Branch
                                          20 Massachusetts Ave., N.W.
                                          Rm. 6132
                                          Washington, D.C. 20530
                                          Telephone: (202) 616-8105
                                          Telefacsimile: (202) 616-8460
                                          Matthew.Lawrence@usdoj.gov

                                          Attorneys for Defendant

<u>Certificate of Service</u>

I hereby certify that on the 15th day of August, 2016, I caused the forgoing to be served on counsel for plaintiff by filing with the court's electronic case filing system.


*/s/ Matthew J.B. Lawrence*

Matthew J.B. Lawrence

<u>Notice of Courtesy Copy</u>

I hereby certify that on the 16th day of August, 2016, I will send a courtesy copy of the foregoing to Chambers by overnight mail.


*/s/ Matthew J.B. Lawrence*

Matthew J.B. Lawrence